NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

5th Circuit Court-Newport Family Division
Case No. 2024-0229
Citation: In re J.B., 2024 N.H. 63


IN RE J.B.; IN RE L.B.

Argued: September 25, 2024
Opinion Issued: November 8, 2024


Elliott, Jasper, Shklar, Ranson & Beaulac, LLP, of Newport (Alice C. Ranson on the brief and orally), for the respondent.


John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Mary A. Triick, senior assistant attorney general, on the brief and orally), for the New Hampshire Division for Children, Youth and Families.


MACDONALD, C.J.

[¶1] The respondent, the mother of J.B. and L.B., appeals an order of the Circuit Court (Swegart, J.) issued following a hearing terminating her parental rights over her children for failing to correct the conditions that led to findings of child neglect within twelve months.  See RSA 170-C:5, III (2022).  The respondent argues that the trial court erred in terminating her parental rights because: (1) she was provided less than twelve months to correct the conditions that led to the finding of neglect; (2) no social study was completed; and (3) the New Hampshire Division for Children, Youth and Families (DCYF) failed to

provide reasonable efforts to address her mental health or to provide visitation with her children. We affirm.

I.    Background

[¶2] The record supports the following facts. J.B. was born in 2013 and L.B. was born in 2020. In June 2022, the children, during a hospital examination, disclosed that their father, who is not a party to this appeal, physically abused the respondent in the children's presence. DCYF filed neglect petitions against both parents.

[¶3] In July 2022, the trial court held an adjudicatory hearing on the neglect petitions. By notice of decision dated August 8, 2022, the court issued an order finding that the children were neglected by the respondent by exposing them to ongoing domestic violence. As part of its order, the court scheduled a permanency hearing for August 2, 2023.

[¶4] A six-month review hearing was held in March 2023. In its order, the court expressed concern about the respondent's recent marriage to a former associate of the children's father. The court observed that the respondent's new husband had multiple convictions for violent crimes and a history of drug involvement. The court was "far from convinced" that exposing the children to this new relationship would not result in additional harm or trauma.

[¶5] A nine-month review hearing was held in June 2023. The court noted that the respondent had sold her home in New Hampshire and moved to Maine with her husband. The court found that the respondent was in partial compliance with the dispositional order requiring her to maintain a safe and appropriate residence. Related to this finding, the court noted that DCYF was uncomfortable with the respondent's husband being around the children, the husband had an "extensive criminal history," and he was a drug user. The court ordered DCYF to continue to provide services to the respondent including case management, counseling, in-home services, and random drug screening.

[¶6] A permanency hearing was held on August 2, 2023. By notice of decision on August 7, 2023, the court issued an order on permanency. The court found that DCYF had made reasonable efforts to finalize the permanency plan of reunification. The court also found that the respondent failed to meet the statutory standard for the children to be returned to her because she was only partially compliant with the outstanding dispositional orders. See RSA 169-C:23 (2022).

[¶7] The court denied the respondent's request for a ninety-day extension under RSA 169-C:24-b, IV (2022). In denying the request, the court observed that: (1) the respondent's move to northern Maine had reduced visits to virtual-

only; (2) the respondent had "married a person who reported at the permanency hearing to have used fentanyl within the last 90 days," and who "was never approved by [DCYF] to be around children and is a former prison associate of [the children's father]"; and (3) the respondent testified that "life could not be better" and that "she is looking forward to moving on with her life." The court stated that "[t]hese facts do not support a finding that [the respondent] is working diligently towards reunification." The court found that granting an extension would not be in the children's best interests as it would "subject the children to the continued uncertainty surrounding both parents" and expose them to "the potential of re-traumatization."

[¶8] The court ordered that adoption become the permanency plan for the children and directed DCYF to file a termination of parental rights petition against the respondent. In September 2023, DCYF filed petitions to terminate the respondent's parental rights. The respondent moved to dismiss the petitions because she was "not afforded at least twelve months to correct the conditions" that led to the finding of neglect. The court held a final hearing on January 24, 2024. In March 2024, the court issued an order denying the motion to dismiss and terminating the respondent's parental rights pursuant to RSA 170-C:5, III, for failing to correct the conditions that led to the finding of neglect. The respondent unsuccessfully moved for reconsideration. This appeal followed.

II.     Analysis

[¶9] Before a court may order the termination of a parent's rights, the petitioning party must prove a statutory ground for termination beyond a reasonable doubt. In re H.J., 171 N.H. 605, 608 (2018). One statutory ground is the parent's failure "to correct the conditions leading to [a neglect] finding [under RSA chapter 169-C] within 12 months of the finding despite reasonable efforts under the direction of the court to rectify the conditions." RSA 170-C:5, III. "To rely upon RSA 170-C:5, III as grounds for termination, DCYF must demonstrate that: (1) the circuit court made a finding of child neglect or abuse under RSA chapter 169-C; (2) the parent failed to correct the conditions of abuse or neglect within 12 months of the finding; and (3) DCYF made reasonable efforts under the direction of the court to rectify or correct the conditions." In re C.O., 171 N.H. 748, 756 (2019).

[¶10] We will affirm the circuit court's order unless it is unsupported by the evidence or erroneous as a matter of law. In re E.R., 176 N.H. 54, 60 (2023). In reviewing its findings, we are mindful that the trial court is in the best position to assess and weigh the evidence before it, and that our task is not to determine whether we would have found differently, but whether a reasonable person could have found as the trial judge did. In re S.A., 174 N.H. 298, 300 (2021).

3

[¶11] The respondent first argues that the trial court erred in terminating her parental rights because she was provided less than twelve months to correct the conditions that led to the finding of neglect. The respondent argues that the earliest she could have had notice of the adverse neglect finding was August 8, 2022, when the notice of decision was issued to her. The respondent asserts that because her compliance was evaluated at the permanency hearing on August 2, 2023, "six days shy of the twelve month mark," she was not provided the full twelve months to correct the conditions that led to the finding of neglect.

[¶12] The termination of parental rights statute, RSA 170-C:5, III, requires a determination that the parents "failed to correct the conditions leading to [a] finding" of neglect or abuse under RSA chapter 169-C "within 12 months of the finding." RSA 170-C:5, III. The date of the permanency hearing under RSA chapter 169-C is immaterial to the court's analysis under RSA 170-C. Thus, when the trial court ruled on the termination petition on March 1, 2024, it could consider the entire twelve-month period beginning on August 8, 2022. In fact, the trial court considered a much longer period. It found in its March 2024 order that "the conditions as they existed in August 2023 at the time of the permanency hearing continue to exist today, almost 6 months later." The record supports the trial court's conclusion.

[¶13] The respondent asserts that "RSA 170-C:5, III only allows termination if [DCYF] has provided reasonable efforts over the twelve months." We disagree with the respondent's interpretation of the statute. By its plain terms, RSA 170-C:5, III does not require a finding of reasonable efforts made by DCYF on every day of the twelve-month period. The trial court ordered, by notice of decision on August 7, 2023, that DCYF was no longer required to make reasonable efforts to facilitate reunification between the children and the respondent. Therefore, DCYF had from August 8, 2022, the date the initial neglect order was issued to the parties, until August 7, 2023, to provide reasonable efforts to facilitate reunification. Although this period of time was only 364 days, our review of the record reveals that DCYF nevertheless provided "reasonable efforts under the direction of the court to rectify the conditions" that led to the finding of neglect. RSA 170-C:5, III; see C.O., 171 N.H. at 756; cf. In re G.F., 175 N.H. 583, 586 (2023) (concluding that DCYF failed to meet its burden in a termination of parental rights case because the trial court did not order DCYF to make reasonable efforts beyond the first nine months of the neglect case). Accordingly, we affirm the trial court's order denying the respondent's motion to dismiss. We observe that, had the trial court scheduled the permanency hearing for August 8, 2023, rather than August 2, the respondent would not have had the factual predicate for her argument regarding RSA 170-C:5, III. Consequently, trial courts should schedule permanency hearings at least twelve months from the time the court issues the notice of decision of an abuse or neglect finding. See RSA 170-C:5, III.

4

[¶14] Next, the respondent argues that the trial court erred in issuing dispositional orders in the neglect case without reviewing a social study, noting that no social study was submitted to the court, or the parties, during the RSA chapter 169-C proceeding. See RSA 169-C:18, V (2022) ("No disposition order shall be made by a court without first reviewing the social study."). DCYF argues that the respondent's argument is not properly before us. We agree with DCYF.

[¶15] While "an initial petition alleging abuse and neglect often sets in motion a series of hearings that may ultimately result in termination of parental rights, abuse and neglect proceedings and [termination of parental rights] proceedings are separate cases." C.O., 171 N.H. at 759 (quotations omitted). Accordingly, we have declined to review challenges to an abuse and neglect proceeding in an appeal from the subsequent termination of parental rights proceeding. See id; see also In re C.M., 166 N.H. 764, 781-82 (2014) (concluding that father's argument in an appeal of a termination of parental rights decision that he was entitled to counsel in the original neglect proceeding was barred by res judicata because the trial court's dispositional order became final and binding when he did not appeal it). Because the respondent could have appealed the trial court's dispositional orders in the neglect case, see RSA 169-C:28 (2022) ("[a]n appeal under this chapter may be taken to the supreme court . . . within 30 days of the final dispositional order"), but did not, we conclude that the respondent's argument is not properly before us in this appeal of the termination of parental rights order. See C.O., 171 N.H. at 760.

[¶16] Finally, the respondent argues that DCYF failed to provide reasonable efforts to address her mental health or to provide visitation with her children. In determining whether DCYF has made reasonable efforts to assist a parent in correcting the conditions that led to a finding of abuse or neglect, the court must consider whether the agency provided services that were accessible, available, and appropriate. Id. at 756; see RSA 169-C:24-a, III(c), IV (2022). We have recognized that DCYF's ability to provide adequate services is constrained by its staff and financial limitations. C.O., 171 N.H. at 756. Thus, DCYF must make reasonable efforts given its available staff and financial resources to maintain the legal bond between parent and child. Id. The word "reasonable" is the linchpin on which DCYF's efforts in a particular set of circumstances are to be judged. See id.

[¶17] The trial court found that "[DCYF]'s efforts were reasonable under the circumstances" and that DCYF "provided visitation support, case management, multiple different service providers, and offered access to therapy with the children." Upon our review of the record, we conclude that the trial

5

court's finding is not unsupported by the evidence or plainly erroneous as a matter of law.  See Michael E., 162 N.H. at 523.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.